**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**CASSIE WILLIAMS,**

**Plaintiff,** **Case No.**

**v.** **Judge**
**JURY DEMAND**

**SCHMIEDE CORPORATION,**

**Defendant.**
_____________________________________/

## COMPLAINT

Plaintiff, Ms. Cassie Williams ("Ms. Williams"), worked for Defendant, Schmiede Corporation ("Schmiede"), as a Receiving Clerk in Tullahoma, Tennessee, from March 25, 2024, until March 4, 2025. Schmiede violated the ADA and TDA when it failed to engage in the interactive process with Ms. Williams, failed to provide her with a reasonable accommodation for her disability, and ultimately terminated her due to her disability and in retaliation for requesting accommodations. Further, Schmiede discussed Ms. Williams' upcoming eligibility for FMLA and informed her of its FMLA policies but terminated her before her eligibility, thus interfering. Thus, Plaintiff brings claims of discrimination and retaliation under the Americans with Disabilities Act and the Tennessee Disability Act and interference under the Family and Medical Leave Act.

## PARTIES

1. Plaintiff Cassie Williams ("Plaintiff" or "Ms. Williams") is a citizen and resident of Coffee County, Tennessee, and a former employee of Defendant, Schmiede Corporation.

2. Defendant Schmiede Corporation ("Defendant" or "Schmiede") is a corporation organized and existing under the laws of the State of Tennessee. Schmiede's registered agent for

service of process is Chris C. Bell, 1865 Riley Creek Road, Tullahoma, TN 37388.

3. At all material times, Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111, and the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

4. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(1).

5. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the previous years and is an "employer" as defined by the FMLA, 29 U.S.C. § 2601.

6. At all material times, Defendant employed Plaintiff.

**JURISDICTION, VENUE, PRE-SUIT FILING REQUIREMENTS**

7. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 et. seq. ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Counts I - II), the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Counts III), and the Family Medical Leave Act (Count IV).

8. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

9. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 et. seq, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge, and this action was commenced within 90 days of receipt of the Notice of Right to Sue.

**FACTS**

10. Plaintiff Cassie Williams was hired by Schmiede Corporation as a Receiving Clerk

at its facility in Tullahoma, Tennessee, on March 25, 2024.

11. As receiving clerk, Ms. Williams received, verified, and processed incoming shipments and inventory.

12. Ms. Williams' direct supervisor throughout her employment was Chris Bell.

13. Ms. Williams was the only female working at the Tullahoma facility, outside of a few women in administrative roles.

14. Ms. Williams was successful in her role as a Receiving Clerk; she never received any negative feedback or performance-related discipline during her employment with Schmiede.

15. In Ms. Williams' position as a Receiving Clerk, she was instructed by Schmiede to work as a team when receiving heavy shipments.

16. Specifically, Schmiede encouraged Ms. Williams to seek help lifting heavy items and to use assistive devices, such as a rolling cart or forklift, when she could not lift something on her own.

17. Although the Receiving Clerk job description states that being able to lift "up to 75 pounds occasionally" is a qualification, it is not listed as an essential job function.

18. Shortly after Ms. Williams started her employment, she began experiencing severe back pain.

19. Ms. Williams' severe back pain is a disability, as defined by the ADA, as it is a physical impairment that substantially limits her ability to lift and bend.

20. Around April 2024, Ms. Williams informed Mr. Bell that she was experiencing severe back pain and engaged in protected activity when she asked an accommodation – assistance with lifting heavy items.

21. Mr. Bell told her to ask Steve Baker, a male employee, for any assistance with

heavy lifting.

22. In practice, Ms. Williams' accommodation allowed Mr. Baker and Ms. Williams to work together to efficiently complete their job duties and move shipments out faster. Mr. Baker lifted most of the heavier boxes that arrived, while Ms. Williams simultaneously handled most of the data entry for those shipments.

23. In April 2024, Ms. Williams began seeing a chiropractor to relieve her severe back pain.

24. On May 7, 2024, Ms. Williams visited Fast Pace Medical Clinic for an appointment regarding her severe back pain; Ms. Williams provided Schmiede with a doctor's note excusing her absence on that day.

25. On October 14, 2024, Ms. Williams underwent an MRI of her back; Ms. Williams provided Schmiede with a doctor's note excusing her absence on that day.

26. On November 7, 2024, Ms. Williams received the results of the MRI, which stated that she had a herniated disc and would require surgery.

27. Shortly thereafter, Ms. Williams informed Mr. Bell of her diagnosis and the need for surgery.

28. Mr. Bell told Ms. Williams to take time off to recover and assured her that her job was not in jeopardy, stating that he had no intention of terminating her, and that he would see her when she returned to work.

29. Ms. Williams applied for short-term disability, as she was not yet eligible for FMLA.

30. Ms. Williams was initially approved for a short-term disability from December 13, 2024, to January 28, 2025.

31. Mr. Bell never instructed Ms. Williams to speak with HR, receive an evaluation of her restrictions, or fill out any paperwork regarding an accommodation request.

32. Upon information and belief, Schmiede does not have any written policies establishing procedures for requesting reasonable accommodation or medical leave.

33. On December 16, 2024, Ms. Williams underwent a Lumbar Laminotomy to remove the herniated disc in her back.

34. Following the surgery, Ms. Williams' doctor informed her that it could take three to six months to recover and that he would determine the exact recovery time after her first follow-up appointment post-surgery.

35. Ms. Williams kept Mr. Bell apprised of her tentative recovery timeline and shared information from her doctor with him during her medical leave.

36. On January 27, 2025, Ms. Williams attended her first follow-up appointment post-surgery.

37. Ms. Williams' doctor advised that she remain out of work until her next follow-up appointment on March 3, 2025.

38. On or around January 28, 2025, Ms. Williams provided a doctor's note containing this information to Mr. Bell.

39. Ms. Williams' short-term disability leave was extended through March 3, 2025.

40. On March 3, 2025, Ms. Williams attended her second follow-up appointment post-surgery.

41. At this appointment, Ms. Williams was released to return to work on March 10, 2025, with light-duty restrictions of no bending, twisting, or lifting over 10 lbs. for up to six weeks.

42. This restriction could be managed on an evolving basis. Specifically, Ms. Williams

was instructed by her doctor to ease back into regular lifting and bending and report to him how she felt, and then he would determine whether to cancel her restrictions.

43. Ms. Williams provided a doctor's note containing this information to Mr. Bell.

44. When Ms. Williams communicated these restrictions to Mr. Bell, he became angry and immediately told her that she could not be accommodated.

45. Prior to Ms. Williams' request for these accommodations, Mr. Bell's behavior toward her had been supportive and reassuring.

46. After Ms. Williams requested this accommodation, Mr. Bell's behavior towards her changed.

47. Just one day later, on March 4, 2025, Ms. Williams met with Mr. Bell and Tanya Matthews, HR, to discuss her plan for returning to work.

48. At this meeting, Mr. Bell informed Ms. Williams, without discussion, that she could not be accommodated and that she was being terminated.

49. During this meeting, Ms. Williams asked why she could not be accommodated and explained that there were employees who could help her lift heavier items. She further stated that she wanted to continue working for Schmiede and reiterated that she was on her way to recovery.

50. Ms. Williams' previous accommodation and allowed support from Mr. Baker caused no undue burden to Schmiede.

51. Mr. Bell admitted that there are times when Mr. Baker is not busy, suggesting that Mr. Baker was available to help Ms. Williams with lift heavy items as needed.

52. During the meeting, Mr. Bell told Ms. Williams that she had not violated any policy of Schmiede.

53. Schmiede did not engage in any interactive process with Ms. Williams to determine

whether her temporary light-duty restrictions could be accommodated.

54. Schmiede did not explore any accommodation options with Ms. Williams, such as continuing temporary leave, assigning a temporary lifting partner, providing assistive devices that were already available at the workplace, or temporarily modifying her duties.

55. Upon information and belief, Schmiede did not have any established ADA protocols, paperwork, or procedures in place at the time of Ms. Williams' accommodation request.

56. Ms. Williams' separation letter stated that her reason for termination was "lack of work- no suitable job position."

57. The next day, on March 5, 2025, Ms. Williams' position was posted on Indeed.

58. Soon after, Ms. Williams' position was filled by a male employee, who upon information and belief does not have a disability.

59. Days after her termination, Ms. Williams was doing yard work, including lifting objects and bending over, and did not feel pain. She reported to her doctor that she was feeling better physically.

60. On March 10, 2025, the day Ms. Williams was scheduled to return to work, she received a letter from her doctor releasing her restrictions and cancelling future physical therapy appointments.

61. At the time of Ms. Williams' termination, she was just a few weeks shy of FMLA eligibility and additional compensation opportunities, such as a raise and bonus.

62. Mr. Bell discussed Schmiede's FMLA policy and that it often gave employees additional time off after their FMLA leave elapsed to recover.

63. Following her termination, Ms. Williams experienced severe emotional distress, including depression and anxiety.

**Count I**
**Violation of ADA/ADAAA- Disability Discrimination**

64. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

65. Pursuant to the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

66. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

67. Plaintiff suffers from a herniated disc that required surgery. This medical condition substantially limited her in one or more major life activities such as lifting, bending, and working and had an actual duration of over six months.

68. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

69. Upon Plaintiff's formal notification of her disability through her doctor's note, Defendant's attitude towards her shifted.

70. On March 3, 2025, Plaintiff requested reasonable accommodations of temporary light-duty restrictions, including no bending, twisting, or lifting over 10 lbs., for up to six weeks. She also requested assistance from another employee for lifting heavy items when they are occasionally received.

71. Plaintiff's healthcare provider determined that she could perform the essential functions of her job with a reasonable accommodation for a temporary period of up to six weeks.

72. Defendant failed to engage in the interactive process in good faith with Plaintiff to determine whether it could accommodate her disability.

73. Defendant did not engage in the interactive process and failed to explore any accommodation options, including continuing temporary leave, assigning a lifting partner, using

assistive devices, or modifying her duties.

74. These accommodations were feasible and would not have caused undue hardship to Defendant.

75. Within a day of Plaintiff's disclosure of her restrictions, she suffered an adverse employment action when Defendant terminated her.

76. Defendant knew or should have known of Plaintiff's disability and the temporary nature of her light-duty restrictions.

77. Upon information and belief, Schmiede replaced Plaintiff with an individual who is not disabled under the ADA.

78. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

79. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count II**
**Violation of ADA/ADAAA- Retaliation**

80. Plaintiff restates and incorporates herein the foregoing paragraphs.

81. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

82. Plaintiff engaged in protected activity under the ADA, including informing Defendant of her disability, requesting reasonable accommodations, taking medical leave, and providing updates on her recovery timeline.

83. Defendant knew or should have known of Plaintiff's protected activities.

84. In response to her protected activities, Defendant terminated Ms. Williams' employment.

85. Defendant terminated Plaintiff's employment one day after she requested accommodations.

86. There was a causal connection between Plaintiff's protected activities and the adverse employment action.

87. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

88. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count III**
**Violation of TDA- Disability Discrimination**

89. Plaintiff restates and incorporates herein the foregoing paragraphs.

90. Pursuant to the TDA, an individual is considered to have a disability if they have a physical or mental impairment that substantially limits one or more major life activities.

91. Plaintiff was a qualified individual with a disability under the TDA.

92. Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA, which culminated in her termination.

93. Plaintiff was subjected to adverse employment actions, including termination because of her disability.

94. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and

continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

95. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count IV**
**(Violation of FMLA - Interference)**

96. Plaintiff restates and incorporates herein the foregoing paragraphs.

97. Defendant interfered with Plaintiff's FMLA protected leave and/or medical leave.

98. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

99. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

100. Defendant discussed its FMLA policies with Plaintiff, aware that she may need to request FMLA leave.

101. Plaintiff was a few weeks shy of being eligible to receive FMLA leave to care for her own serious health condition.

102. Defendant subjected Plaintiff to disparate terms and conditions of employment after discussing Plaintiff's potential FMLA.

103. Defendant's actions constitute interference violations of the FMLA.

104. Defendant's conduct harmed and caused damage to Plaintiff.

105. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**RELIEF REQUESTED**

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance, and reimbursement for medical costs;

3. Reinstatement and/or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Liquidated Damages;

6. Punitive damages;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which she may be entitled under the ADA, the TDA, the FMLA, and any other statutory or common law.

Respectfully submitted,

*<u>/s/ Heather Moore Collins</u>*
Heather Moore Collins BPR # 026099
Ashley Shoemaker BPR# 037651
Lucia V. Izzolo BPR # 042496
HMC CIVIL RIGHTS LAW, PLLC
302 Peachtree Street
Nashville, TN 37210
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com
lucia@hmccivilrights.com
*Attorneys for Plaintiff*