**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

**CASSIE WILLIAMS,**

        *Plaintiff,*                **Case no. 3:26-cv-00248**

**v.**

**SCHMIEDE CORPORATION,**        **District Judge Richardson
Magistrate Judge Holmes**

        *Defendant.*

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant Schmiede Corporation ("Schmiede")'s Motion to Dismiss Plaintiff's claims under the Americans with Disabilities Act ("ADA"), Tennessee Disability Act ("TDA"), and Family Medical Leave Act ("FMLA") misstates the law, ignores the well-pled allegations of the Complaint, and relies on facts outside the pleadings. Defendant argues that Plaintiff is not a "qualified individual with a disability" and that Plaintiff's Failure to Accommodate claim fails. For the reasons stated herein the motion is due to be denied because Plaintiff's claims under the ADA and TDA are adequately pled. Plaintiff does not oppose dismissing her FMLA Interference claim.

### THE WELL-PLED FACTUAL ALLEGATIONS OF THE COMPLAINT

Ms. Cassie Williams was hired by Schmiede Corporation as a Receiving Clerk at its facility in Tullahoma, Tennessee, on March 25, 2024. (Compl. ¶ 10). As Receiving Clerk, Ms. Williams received, verified, and processed incoming shipments and inventory. (Compl. ¶ 11). Her direct supervisor throughout her employment was Chris Bell. (Compl. ¶ 12). Ms. Williams was successful in her role and never received any negative feedback or performance-related discipline during her employment. (Compl. ¶ 14).

In her position as a Receiving Clerk, Ms. Williams was instructed by Schmiede to work as a team when receiving heavy shipments. (Compl. ¶ 15). Specifically, Schmiede encouraged her to seek help lifting heavy items and to use assistive devices, such as a rolling cart or forklift, when she could not lift something on her own. (Compl. ¶ 16). Although the Receiving Clerk job description states that being able to lift "up to 75 pounds occasionally" is a qualification, it is not listed as an essential job function. (Compl. ¶ 17).

Shortly after starting her employment, Ms. Williams began experiencing severe back pain. (Compl. ¶ 18). Her severe back pain is a disability under the ADA, as it is a physical impairment that substantially limits her ability to lift and bend. (Compl. ¶ 19). Around April 2024, Ms. Williams informed Mr. Bell of her severe back pain and requested an accommodation of having assistance with lifting heavy items. (Compl. ¶ 20). Mr. Bell told her to ask Steve Baker, a male employee, for any assistance with heavy lifting. (Compl. ¶ 21). In practice, this accommodation allowed Mr. Baker and Ms. Williams to work together to efficiently complete their job duties and move shipments out faster, with Mr. Baker lifting most of the heavier boxes while Ms. Williams simultaneously handled most of the data entry for those shipments. (Compl. ¶ 22).

In April 2024, Ms. Williams began seeing a chiropractor to relieve her severe back pain. (Compl. ¶ 23). On May 7, 2024, she visited Fast Pace Medical Clinic for an appointment regarding her back pain and provided Schmiede with a doctor's note excusing her absence. (Compl. ¶ 24). On October 14, 2024, Ms. Williams underwent an MRI of her back, providing Schmiede with a doctor's note excusing her absence that day. (Compl. ¶ 25). On November 7, 2024, Ms. Williams received the MRI results, which revealed a herniated disc, requiring surgery. (Compl. ¶ 26). She informed Mr. Bell of her diagnosis and need for surgery shortly thereafter. (Compl. ¶ 27). Mr. Bell told Ms. Williams to take the time off she needed to recover, assured her that her job was not in

jeopardy, and stated he had no intention of terminating her. (Compl. ¶ 28). Mr. Bell never instructed Ms. Williams to speak with HR, receive an evaluation of her restrictions, or to fill out any paperwork regarding an accommodation request. (Compl. ¶ 31). Upon information and belief, Schmiede does not have any written policies establishing procedures for requesting reasonable accommodation or medical leave. (Compl. ¶ 32).

On December 16, 2024, Ms. Williams underwent a Lumbar Laminotomy to remove the herniated disc in her back. (Compl. ¶ 33). Ms. Williams applied for short-term disability, as she was not yet eligible for FMLA, and was initially approved for leave from December 13, 2024, through January 28, 2025. (Compl. ¶¶ 29–30). Ms. Williams kept Mr. Bell apprised of her recovery timeline throughout her leave and shared information from her doctors with him. (Compl. ¶ 35). On January 27, 2025, Ms. Williams attended her first post-surgery follow-up appointment. (Compl. ¶ 36). Her doctor advised that she remain out of work until her next appointment on March 3, 2025, and her short-term disability leave was extended accordingly. (Compl. ¶¶ 37, 39). Ms. Williams provided this information to Mr. Bell by doctor's note on or around January 28, 2025. (Compl. ¶ 38).

On March 3, 2025, Ms. Williams attended her second post-surgery follow-up appointment, at which she was released to return to work on March 10, 2025, with light-duty restrictions of no bending, twisting, or lifting over 10 pounds. for up to six weeks. (Compl. ¶ 41). These restrictions were to be managed on an evolving basis; Ms. Williams was instructed by her doctor to ease back into regular lifting and bending, report how she felt, and her doctor would then determine whether to cancel her restrictions entirely. (Compl. ¶ 42). Ms. Williams provided a doctor's note containing this information to Mr. Bell. (Compl. ¶ 43). When Ms. Williams communicated her restrictions to Mr. Bell, he became angry and immediately told her that she could not be accommodated. (Compl.

¶ 44). Prior to this request, Mr. Bell's behavior toward Ms. Williams had been supportive and reassuring throughout her surgery and recovery (Compl. ¶ 45). His attitude shifted after she formally requested the accommodation. (Compl. ¶ 46).

Just one day later, on March 4, 2025, Ms. Williams met with Mr. Bell and Tanya Matthews from HR. (Compl. ¶ 47). At this meeting, Mr. Bell informed Ms. Williams, without discussion, that she could not be accommodated and that she was being terminated. (Compl. ¶ 48). Ms. Williams asked why she could not be accommodated, explained that other employees could help her lift heavier items, stated that she wanted to continue working, and reiterated that she was on her way to recovery. (Compl. ¶ 49). Ms. Williams' previous accommodation of Mr. Baker's lifting support imposed no undue burden on Schmiede. (Compl. ¶ 50). Mr. Bell admitted that there are times when Mr. Baker is not busy, suggesting that Mr. Baker was available to assist Ms. Williams with heavy lifting as needed. (Compl. ¶ 51).

Schmiede did not engage in any interactive process with Ms. Williams to determine whether her temporary restrictions could be accommodated, and did not explore any accommodation options, such as continuing temporary leave, assigning a temporary lifting partner, providing available assistive devices, or temporarily modifying her duties. (Compl. ¶¶ 53–54). Upon information and belief, Schmiede did not have any established ADA protocols, paperwork, or procedures in place at the time of Ms. Williams' accommodation request. (Compl. ¶ 55).

Days after the termination, Ms. Williams was able to perform some yard work without pain and reported to her doctor that she was feeling physically better. (Compl. ¶ 59). On March 10, 2025, the day Ms. Williams was scheduled to return to work, her doctor released her restrictions and canceled future physical therapy appointments. (Compl. ¶ 60). At the time of her termination,

Ms. Williams was just a few weeks shy of FMLA eligibility, as well as additional compensation opportunities, including a raise and bonus. (Compl. ¶ 61).

**STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. To survive a Rule 12(b)(6) Motion to Dismiss, a claim's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erikson v.* Pardus, 551 U.S. 89, 93 (2007).

The court must construe the claim in a light most favorable to the plaintiff, accept the factual allegations as true, and determine whether the plaintiff's factual allegations present plausible claims. *Twombly,* 550 U.S. at 570; *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Central States Pension Fund v. Mahoning Nat'l Bank*, 112 F.3d 252, 255 (6th Cir. 1997). A court should assume the veracity of well-pled factual allegations and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Additionally, the pleadings need to demonstrate just enough factual information to create

a reasonable expectation that discovery will uncover evidence supporting the claim. *Twombly*, 550 U.S. at 548.

**ARGUMENT**

**A. Plaintiff Presented Legally and Factually Sufficient Claims of Disability Discrimination Based on Defendant's Violation of the ADAAA.**

Plaintiff's claims, when viewed in the light most favorable to her, and taken as true, satisfy the notice pleading requirement and should not be dismissed. To survive a motion to dismiss, a Plaintiff "must plead facts that make plausible the inference that (1) [she] is disabled, (2) [she] is qualified to perform [her] job requirements with or without a reasonable accommodation, and (3) [she] would not have been discharged but for the disability." *Thompson v. Hendrickson USA, LLC*, No. 3:20-cv-000482, 2021 Dist. LEXIS 41697 at *37 (M.D. Tenn. 2021) (quoting *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020)). To justify the dismissal of Plaintiff's ADAAA claim, Defendant argues that Plaintiff cannot establish she is a qualified individual with a disability. Thus, Plaintiff addresses these first two elements.

**1. Plaintiff is a Qualified Individual with a Disability.**

Defendant argues that plaintiff was not disabled under the law because at the time she requested an accommodation of temporary light duty, she was in a post-surgical period. (Def. Memo at 5-6). Defendant's argument defies the plain language of the statute. An individual is "disabled" under the ADA if she has "(A) a physical or mental impairment that substantially limits one or more major life activities . . (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. §12102(1).

Under the 2008 amendments to the ADA, Congress made clear that the definitions of both a 'disabled person' and 'substantially limits' are to 'be construed broadly in favor of expansive

coverage.'" *Morrissey v. Laurel Health Care Co.*, 943 F.3d 1032, 1039 (6th Cir. 2019)[1]. "The definition of disability" under the ADA "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The TDA mirrors the ADA, and the same standards apply to both statutes. *Dunn v. Chattanooga Publ'g Co.*, 993 F. Supp. 2d 830, 835 (E.D. Tenn. 2014) (citing *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) (*abrogated in part by Gossett v. Tractor Supply Co., Inc.,* 320 S.W.3d 777 (Tenn. 2010)); *see also Cardenas-Meade v. Pfizer, Inc.,* 510 F. App'x 367, 369 n.2 (6th Cir. 2013). Likewise, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage," and "is not meant to be a demanding standard." *Hostettler v. City of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018); 29 C.F.R. § 1630.2(j)(1)(i).

In general, a plaintiff does not need to submit scientific, medical, or statistical proof to establish a substantial limitation, 29 C.F.R § 1630.2(j)(v); *Morrissey*, 943 F.3d at 1039; *see* 28 C.F.R. Pt. 35, App. C ("[A]n individual whose impairment causes pain or fatigue that most people would not experience when performing that major life activity may be substantially limited."). Additionally, an impairment need not prevent, or significantly restrict, a major life activity to be substantially limiting. 29 CFR § 1630.2(j)(1)(ii). The primary concern of the ADA is "whether covered entities have complied with their obligations and whether discrimination has occurred," not whether an individual's impairment is a disability. *Id.* § 1630.2(j)(1)(iii). Pertinent major life activities include, but are not limited to, walking, standing, lifting, bending, and working. 42 U.S.C. § 12102(2)(A). And, "the term 'major' shall not be interpreted strictly to create a demanding standard." 29 C.F.R. § 1630.2(i)(2).

---

[1] When Congress enacted the ADAAA, it intended "that the establishment of coverage under the ADA should not be overly complex nor difficult, and expect[ed] that the [ADAAA] will lessen the standard of establishing whether an individual has a disability for purposes of coverage under the ADA." H.R. Rep. No. 110-730, at 9 *(2008).

The ADA does not require a specified minimum duration that an impairment must last in order to be substantially limiting, an impairment "lasting or expected to last fewer than six months can be "substantially limiting." 29 C.F.R. 1630.2(j)(1)(ix). Additionally, the six month "transitory" definition does not apply to the definition of "disability" when analyzing an actual disability (29 C.F.R. 1630.2(g)(1)(i)) or record of disability (29 C.F.R. 1630.2(g)(1)(ii)).[2] *See* CFR § 1630.15(f). Under those sections, the effects of an impairment "lasting or expected to last fewer than six months can be "substantially limiting." 29 C.F.R. 1630.2(j)(1)(ix). Further, "'the pertinent inquiry is not whether the plaintiff's restrictions were labeled 'temporary' or 'permanent' or the precise length of time she was under restrictions, but whether she was substantially limited in a major life activity.'" *Lowe v. Calsonic Kansei N. Am., Inc.*, No. 1:18-cv-000027, 2020 U.S. Dist. LEXIS 84202, at * 15 (M.D. Tenn. 2020) (quoting *Mullenix v. Eastman Chem. Co.*, 237 F. Supp. 3d 695, 705 (E.D. Tenn. 2017).

Lastly, under the ADAAA, a plaintiff's disability must be assessed in its active state, not in remission. 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active"). Furthermore, Plaintiff's disability must also be assessed without regard to mitigating measures like medical treatments. 42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi).

Here, Plaintiff has alleged sufficient facts to establish that she has a disability under the ADA. She claimed that shortly after starting her employment, she began experiencing severe back pain. (Compl. ¶ 18). Her severe back pain qualifies as a disability under the ADA because it was a physical impairment that substantially limited her ability to lift, bend, and work. (Compl. ¶¶ 19, 67). These activities are considered major life activities under the ADA, as amended. 42 U.S.C. §

---

[2] While there is a "transitory and minor" exception to the "regarded as" analysis where "transitory" is defined as six months, this is often confused in the analysis of an actual disability. 29 C.F.R. 1630.15(f).

12102(2)(A). The seriousness of her condition is first shown by her early communication with her supervisor regarding her severe back pain and her request for assistance with lifting heavy items (Compl. ¶¶ 16, 18, 20). Defendant acknowledged that Plaintiff was experiencing severe back pain and approved her accommodation request, advising her to use Steve Baker as a lifting helper. (Compl. ¶¶ 21, 22). The extent of her condition is further evidenced by her treatment records, diagnoses, and the need for surgery. She attended multiple medical and chiropractic appointments, which led to an official diagnosis on November 7, 2024, of a herniated disc, which required surgery. (Compl. ¶¶ 23-26). Additionally, Plaintiff submitted a physician's note outlining her restrictions of bending, twisting, and lifting more than 10 pounds. (Compl. ¶ 41). Providing this information to her employer was sufficient to put Defendant on notice that Plaintiff was suffering from a disability. (Compl. ¶¶ 41, 43). There are enough facts alleged at this stage to demonstrate that Plaintiff had a disability and was substantially limited under the ADAAA's broad definitions. *Morrissey*, 943 F.3d at 1040 (relevant information that a person has a disability "could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions"); *See also Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1269-70, 24 Fla. L. Weekly Fed. C 1162 (11th Cir. 2014) (Plaintiff suffering from a herniated disc requiring surgery and limiting ability to bend and lift more than 10 pounds presented sufficient evidence of a disability under the ADAAA).

Defendant almost exclusively relies on nonbinding pre-ADAAA caselaw to support its conclusion that Ms. Williams is not an individual with a disability.[3] Defendant also cites *Lowrey v. RK Admin. Servs.*, No. 2:21-CV-5573, 2022 WL 2482839 (S.D. Ohio July 6, 2022), stating that

---

[3] Defendants cite three pre-ADAAA cases from other circuits: *Gutridge v. Clure,* 153 F.3s 898, (8th Cir. 1998), *McDonald v. Pennsylvania, Dep't of Public Welfare,* 62 F.3d 92 (3rd Cir. 1995), and *Evans v. City of Dallas*, 861 F.2d 846 (5th Cir. 1988). None of these cases are binding in the 6th Circuit, and the assertions made should be disregarded.

it is analogous to Plaintiff's case. It is not. This case is distinguishable for multiple reasons. In *Lowrey*, the Plaintiff suffered a hernia and was told to take six weeks off to recover. 2022 WL 2482839, at *5. However, he was able to take one day off and return to doing light-duty work immediately after. *Id.* He did not allege that he was substantially limited in any major life activities. *Id.* at * 11. Additionally, the case cited multiple examples where hernias, in particular, were not found to be disabilities under the ADA. *Id.* The court in *Lowrey* contended that a "temporary disability while recuperating from surgery is generally not considered a disability under the ADA." *Id.* at *10. However, this is a quote from a pre-amendment case from the Kansas District Court, which is unpersuasive and outdated.[4] *See Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 60 F.Supp.2d 1145, 1151-1152 (D. Kan. 1999).

Again, it is important to note that the ADAAA significantly relaxed the requirements for defining "disability under the ADA." *Jones v. Honda of Am. Mfg.*, No. 3:13-cv-167, 2015 U.S. Dist. LEXIS 28682, at *34-35 (S.D. Ohio Mar. 9, 2015) ("The requirement to prove that one is disabled at the time of the adverse employment action cannot be reconciled with the ADAAA's explicit "rule of construction" that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."). Because Plaintiff has alleged sufficient facts to show that she suffered from a herniated disc that substantially limited her ability to lift, bend, and work, she easily meets the definition of a disability under the ADAAA. (Compl. ¶¶ 19, 67). Whether in remission after surgery or not, Plaintiff's condition must be assessed in its active state. *See* 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii).

---

[4]The Sixth Circuit has recognized that Congress, through the ADA Amendments Act, repudiated earlier, restrictive interpretations of 'disability' and directed that the term be construed broadly, making pre-amendment disability decisions of limited persuasive value. See *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521–23 (6th Cir. 2021) (emphasizing that the ADAAA 'broadened the definition of disability' and that post-ADAAA courts should not demand the kind of 'extensive analysis' reflected in pre-amendment cases; evidence of lifting restrictions was enough to created issue of fact whether plaintiff had a disability under ADAAA).

To the extent that Defendant argues Plaintiff's condition was limited and transitory, although not the correct analysis for defining an actual disability, Plaintiff's condition lasted from March or April of 2024 until at least March 2025, a full year, when she was given restrictions by her doctor to remain on light duty for another six weeks before returning to full-duty work. (Compl. ¶¶ 18, 23; Def. Memo at 6). Plaintiff alleged that at the time of her March 3, 2025, request for temporary light-duty restrictions, she was "on the way to recovery." (Compl. ¶ 41, 43). She also alleged that she had requested these restrictions on an evolving basis, as instructed by her doctor, to ease back into regular lifting and bending. (Compl. ¶ 42). Defendant's assertion that Plaintiff's condition was "limited and transitory" because she was doing yard work on one occasion, *after* her termination, without pain, is inconsequential. Plaintiff did not elaborate on what "yard work" consisted of, or how strenuous her activities were in the week following her termination. (Compl. ¶ 59). Regardless, any analysis of when Plaintiff's disability officially ended is not appropriate at this stage of litigation. Plaintiff alleged that she was beginning to feel better at this point, but her condition, which required an accommodation, was still substantially limiting her ability to engage in major life activities, such as lifting and bending, as evidenced by her request for an accommodation, her doctor's note, and continued medical treatment. (Compl. ¶¶ 41-43, 67, 70).

Finally, determining whether an individual qualifies as disabled is a question of fact that must be examined by the factfinder after discovery is complete and all the evidence has been presented. At present, it is too early in the litigation to determine these issues of fact.

For these reasons, Plaintiff has sufficiently pled that she suffered from a disability under the ADA, and Defendant's motion should be denied.

2. **Plaintiff was Qualified to Perform the Essential Functions of her Job With or Without an Accommodation.**

Defendant argues that Plaintiff is not a qualified individual with a disability because she could not perform the essential functions of the job with or without an accommodation. This argument fails for two independent reasons: (1) whether lifting constituted an essential function and whether the requested accommodation was reasonable are questions of fact that cannot be resolved at the pleading stage; and (2) the factual allegations in the Complaint, taken as true, plausibly establish that Ms. Williams could perform her essential job functions with or without a reasonable accommodation.

### a. Essential Functions are a Factual Question not Appropriate for Resolution on a Motion to Dismiss.

Whether a particular task rises to the level of an "essential function," and whether a proposed accommodation is reasonable, are questions of fact appropriately reserved for the fact finder after the completion of discovery. *Bower v. Fed. Exp. Corp.*, 156 F.Supp 2d 678, 688 (W.D. Tenn. 2001); *Woodling v. Geobuild, LLC*, 600 F. Supp. 3d 815, 823 (N.D. Ohio 2022) ("The inquiry into whether a job function is essential is highly fact specific."); *Keith v. Cty. of Oakland*, 703 F.3d 918 (6th Cir. 2013) ("Whether a job function is essential is a question of fact."). Questions of fact must be examined by the factfinder after discovery is complete and all the evidence has been presented. Since discovery has not yet taken place, dismissal at this stage, before any evidence has been developed in the record, is premature and inappropriate.

### b. The Complaint Plausibly Alleges that Lifting was Not an Essential Function.

As a Receiving Clerk, Ms. Williams' core responsibilities were to receive, verify, and process incoming shipments and inventory. (Compl. ¶ 11). Schmiede instructed Ms. Williams to work as a team when receiving shipments and encouraged her to seek help lifting heavy items and to use assistive devices, such as a rolling cart or forklift, when she could not lift something on her own. (Compl. ¶ 15-16). Critically, although the Receiving Clerk job description states that being

able to lift "up to 75 pounds occasionally" is a qualification, it is not listed as an essential job function. (Compl. ¶ 17). The distinction is not accidental; a qualification threshold and a listed essential function are different categories of the job description, and Defendant's attempt to collapse them is unsupported by the Complaint. Moreover, in practice, Ms. Williams' accommodation allowed Mr. Baker and Ms. Williams to work together to efficiently complete their job duties and move shipments out faster, with Mr. Baker lifting the heavier shipments while Ms. Williams simultaneously handled the data entry for those shipments. (Compl. ¶ 22). Mr. Bell admitted that there are times when Mr. Baker is not busy, indicating that Mr. Baker was available to help Ms. Williams lift heavy items as needed. (Compl. ¶ 51). Taken as true, these allegations plausibly establish that independent heavy lifting was not essential to the role.

### c. Defendant's Argument Rests on Facts Not Alleged in the Complaint.

Defendant contends that accommodating Ms. Williams "would require another employee to be at Ms. Williams 'beck and call'" and would result in "continued reliance on a co-worker for a broad range of routine lifting." (Def. Memo at 8). It also states that "heavy' is subjective, but that items weighing 10 pounds are not "heavy" for the Receiving Clerk, and not being able to pick up "any shipments whatsoever" rendered Ms. Williams unable to perform the essential functions of her job. *Id.* No such allegations appear anywhere in the Complaint and therefore should be disregarded by the Court. Ms. Williams did not allege that she would require assistance with all lifting, only that she requested occasional assistance on heavier items, as she had been instructed to seek from the beginning of her employment. (Compl. ¶¶ 15-16, 70). Defendant's characterization is not only unsupported, but it is also precisely the kind of factual dispute that underscores why discovery is necessary and why dismissal of this action is inappropriate. If

Defendant wishes to rely on extraneous factual contentions, the proper vehicle is a motion for summary judgment following discovery, not a motion to dismiss.[5]

### d. Defendant's Reliance on *Szasz* and *Woodling* is Misplaced.

Defendant cites *Szasz v. Dolgencorp, LLC*, 625 F.App'x 297, 303 (6th Cir. 2015), for the proposition that "an accommodation allowing plaintiff to forego all heavy lifting constitutes an undue hardship on the company." (Def. Memo at 9). That case is distinguishable on multiple grounds. First, *Szasz* is an unpublished opinion decided at the summary judgment stage, not on a motion to dismiss, after a fully developed evidentiary record. 625 F. App'x 297. Its conclusion was fact-specific and case-specific, not a bright-line rule. Second, the plaintiff in *Szasz* was a store manager at an understaffed Dollar General store, often one of only one or two employees on-site at a time. *Id.* at 299. These circumstances bear no resemblance to Ms. Williams' role in a facility with over 50 employees, some of whom were specifically directed to assist Ms. Williams with heavy lifting. (Compl. ¶ 2, 21, 51). Third, and most importantly, unlike the plaintiff in *Szasz*, Ms. Williams does not seek to forego all heavy lifting indefinitely. 625 F. App'x at 300. She requested temporary light-duty restrictions for up to six weeks while recovering from surgery, with her physician directing her to ease back into regular lifting on an evolving basis. (Compl. ¶¶ 41-42). Her physician's restrictions were expected to last only up to six weeks from her March 3, 2025, appointment. *Id.*

---

[5] "If, on a motion [under Rule 12(b)(6)], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Carter v. Stanton*, 405 U.S. 669, 671, 31 L. Ed. 2d 569, 92 S. Ct. 1232 (1972) (holding that a district court that considered matters outside the pleadings was required to convert a Rule 12(b)(6) motion into one for summary judgment) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 698 (6th Cir. 2005)). Both the Supreme Court and the Sixth Circuit have found a district court's failure to grant such an opportunity constitutes reversible error. *See, e.g., Carter*, 405 U.S. at 671-72; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171 (6th Cir. 1971) (finding reversible error where a district court considered matters outside the complaint without either treating the 12(b)(6) motion at issue as a motion for summary judgment under Rule 56 or allowing the parties to present additional evidence outside the pleadings).

Defendant's reliance on *Woodling v. GeoBuild* fares no better. 600 F. Supp. 3d, 815. That case involved a union construction laborer whose primary job duties were overwhelmingly physical in nature, such that a 25-pound lifting restriction would have precluded most routine tasks. *Id.* Ms. Williams was not a construction laborer. Her primary job functions involved data entry and verification of incoming shipments, tasks she could perform without restriction, while heavy lifting was incidental, encouraged to be delegated, and not listed as an essential function in her job description. (Compl. ¶¶ 11, 16-17, 22).

In sum, Ms. Williams has plausibly alleged that she was a qualified individual who could perform the essential functions of her role with or without a reasonable, temporary accommodation. Dismissal of her ADA claim on this basis is unwarranted.

### 3. Plaintiff's Failure to Accommodate Claim States a Claim Upon Which Relief Can Be Granted.

Defendant argues that Ms. Williams' failure-to-accommodate claim fails because her requested accommodation of temporary light-duty was "per se unreasonable" and would have "eliminated an essential function" of her job. (Def. Memo 9-10). Defendant invokes the rule that accommodations that "eliminate an essential function" are "per se unreasonable," citing *Swann v. Washtenaw Cnty.*, 221 F. Supp. 3d 936, 943 (E.D. Mich. 2016). *Id.* However, this rule is predicated on Plaintiff's accommodation actually eliminating an essential function. As explained *supra*, Defendant has not and cannot establish at this stage whether independent heavy lifting was an essential function of Plaintiff's job. In fact, Plaintiff's allegations, if anything, show that Defendant had no trouble accommodating Plaintiff before it knew she had an actual disability that required taking time off, getting surgery, receiving doctor's restrictions, and formally requesting an

accommodation. (Compl. ¶¶ 20-22, 50). Thus, Defendant's 'per se unreasonable' argument fails as a matter of course.[6]

Plaintiff has plausibly stated a Failure to Accommodate claim under the ADA. Failure to accommodate can constitute discrimination under the ADA when an employer fails to make a reasonable accommodation for the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). Plaintiff plausibly states a claim for Failure to Accommodate. She requested a temporary accommodation of light-duty restrictions following back surgery. (Compl. ¶ 70). In response, Defendant denied the accommodation without engaging in the interactive process and was terminated one day later. (Compl. ¶¶ 44,47-48, 75). Taken as true, these facts are more than sufficient to state a claim.

### a. Plaintiff's Requested Accommodation was Temporary and Not an Undue Burden.

Another reason Defendant's reliance on *Swann* and its 'per se unreasonable' argument are unpersuasive is that Plaintiff's accommodation request was for temporary lifting restrictions, rather than a permanent delegation of an essential duty. 221 F. Supp. 3d at 939. On March 3, 2025, Ms. Williams requested light-duty restrictions of no bending, twisting, or lifting over 10 pounds for up to six weeks, to be managed on an evolving basis as directed by her physician. (Compl. ¶¶ 41-42). As explained *supra*, this is not a permanent elimination of a job function. Schmiede previously provided the same accommodation for months, without any undue burden, and to the benefit of operational efficiency. (Compl. ¶¶ 22, 50). Defendant cannot credibly claim undue

---

[6] The court in *Brumley v. UPS*, No. 3:20-cv-00222, 2021 U.S. Dist. LEXIS 250567, at \*33 (M.D. Tenn. Aug. 9, 2021), explained that, "In failure-to-accommodate claims where the employee requests an 'accommodation that *exempts* her from an essential function,' the essential functions and reasonable accommodation analyses run together.' One conclusion (the function is essential) leads to the other (the accommodation is not reasonable)." *EEOC v. Ford Motor Co.*, 782 F.3d at 764 (emphasis added) (quoting *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1240 (9th Cir. 2012). Because the resolution of the first issue rested on whether the requested accommodation eliminated an essential function of the job, which presented a question of fact, summary judgment was denied.

hardship from an accommodation it already provided without issue. Anyhow, the determination is a factual question that requires discovery to resolve.

**b. Defendant Refused to Engage in the Interactive Process at all.**

The ADA requires employers to engage in the interactive process with a disabled employee and communicate in good faith regarding possible accommodations. *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007). Schmiede did not. Rather than exploring whether the temporary accommodation was feasible, Schmiede failed to engage in any interactive process with Ms. Williams to determine whether her temporary light-duty restrictions could be accommodated and terminated her one day after she provided a doctor's note outlining the restrictions (Compl. ¶¶ 48, 53).

Once an employee requests an accommodation, the employer has a duty to engage in an interactive process. *Hostettler*, 895 F.3d at 857. "The purpose of this process is to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). Accordingly, "both parties have a duty to participate in good faith." *Id.* An employer is not participating in good faith if it "determine[s] what accommodation it [is] willing to offer before ever speaking with" the employee. *Blanchet v. Charter Communs., LLC*, 27 F.4th 1221, 1232 (6th Cir. 2022) (quoting *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018)).

When Ms. Williams communicated her restrictions to Mr. Bell on March 3, 2025, he became angry and immediately told her she could not be accommodated before any discussion had taken place. (Compl. ¶ 44). Schmiede did not explore any accommodation options with Ms. Williams, such as continuing temporary leave, assigning a temporary lifting partner, providing

assistive devices already available at the workplace, or temporarily modifying her duties (Compl. ¶¶ 53–54). Upon information and belief, Schmiede had no established ADA protocols, paperwork, or procedures in place at the time of Ms. Williams' request (Compl. ¶ 55). Moreover, Mr. Bell never instructed Ms. Williams to speak with HR, receive an evaluation of her restrictions, or fill out any paperwork regarding an accommodation request (Compl. ¶ 31). An employer who summarily refuses to engage in the interactive process and immediately terminates an employee cannot, at the pleading stage, claim that the accommodation would have been unreasonable. *See Blanchet*, 27 F.4th at 1232 (reversing the district court's grant of summary judgment on Plaintiff's disability discrimination claim and holding that Defendant could not use its failure to engage in the interactive process to argue that Plaintiff's proposed accommodation was unreasonable). Again, whether her proposed accommodation would have constituted an undue burden is a factual question that Defendant has made no effort to investigate and is precisely the kind of question for which discovery is required. *See Bower*, 156 F.Supp 2d at 688.

Ms. Williams has adequately stated a failure-to-accommodate claim. The Complaint alleges a disability, a temporary and reasonable accommodation request, the existence of a prior accommodation that functioned without burden, Defendant's refusal to engage in any interactive process, and immediate termination following the request. That is more than sufficient to survive a motion to dismiss, and thus, Defendant's motion should be denied.

**4. Plaintiff States a Plausible Claim under the Tennessee Disability Act.**

Defendant argues that Ms. Williams' TDA claim fails because she was not disabled at the time of her termination and, under the TDA, was required to plead facts establishing she could perform her job *without* accommodation. (Def. Memo at 10–11). Both contentions fail on the face of the Complaint.

The TDA prohibits terminating an employee "based solely upon a physical, mental, or visual disability" unless that disability "to some degree prevents the applicant from performing the duties required by the employment." T.C.A. § 8-50-103. Courts interpret the "to some degree" language in the TDA as requiring a claimant to show that she 'was qualified for the position' in addition to the two other elements—that she was disabled, and that she suffered an adverse employment action. *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 852-53 (Tenn. Ct. App. 2009). To be "qualified" for the position, the ADA requires that the individual must (1) possess the requisite skill, education, experience, and training for the position; and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Id.* at 853 (citing 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m)). However, the TDA contains no reasonable accommodation requirement. *Id.* at 841-42. Therefore, the second prong of the "qualified" requirement has been read to mean that Plaintiff must be able to perform the essential functions of the role *without* a reasonable accommodation. *Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465 (6th Cir. 1993).

First, Defendant's argument that Ms. Williams "was not disabled at the time of her termination" is addressed fully in Section A(1) and fails for the same reasons explained *supra*. Ms. Williams suffered from a herniated disc that substantially limited her ability to lift, bend, and work, required surgery, and had an actual duration of over six months. (Compl. ¶ 67). It is a qualifying disability under any reasonable construction of the TDA.

Second, Plaintiff's allegations satisfy the TDA requirement of pleading that she was qualified for the position. Plaintiff could perform all essential functions of her job *without* the requested accommodation of temporary light duty. (Compl. ¶ 11). None of her essential functions were eliminated by her doctor's restrictions, as heavy lifting was not an essential function. (Compl.

¶ 17). This argument is fully addressed *supra* in Sections 2 and 3. Despite her need for temporary lifting restrictions, Plaintiff was nevertheless able to perform the core duties of her job: receiving, verifying, and processing incoming shipments, and entering data that reflected the receipt of shipments. (Compl. ¶¶ 11, 22). Plaintiff's qualifications are further shown by the fact that she was always successful in her role, never having received negative feedback or performance-related discipline during her employment. (Compl. ¶ 14). Her accommodation was limited and intended for certain physical duties that would allow her to continue performing her job efficiently, as she had done without fail from March through November 2024. (Compl. ¶ 22). The core of her role was not eliminated by her requested restrictions; fonly the incidental task of unassisted heavy lifting was affected, and that task was never essential to begin with.

Plaintiff has sufficiently alleged a claim under the Tennessee Disability Act ("TDA") by showing a direct causal connection between her disability and the termination. Despite Plaintiff's ability to perform the essential functions of her job, Defendant terminated her based solely on her disability and medical restrictions. (Compl. ¶ 92). When Ms. Williams presented her doctor's note outlining her temporary restrictions, Mr. Bell became angry and immediately told her she could not be accommodated. (Compl. ¶ 44). One day later, at a meeting with Mr. Bell and HR, Ms. Williams was told, without discussion, that she would be terminated. (Compl. ¶¶ 47–48). Prior to her accommodation request, Mr. Bell had been supportive throughout her surgery and recovery; his attitude shifted upon learning the seriousness of the condition when she formally presented her medical restrictions. (Compl. ¶¶ 45–46, 69). These allegations plausibly establish that Ms. Williams was terminated solely because of her disability.

Thus, Plaintiff has alleged that (1) lifting was not an essential function of her position, (2) she remained capable of performing the essential functions of her job without the requested

accommodation, and (3) she was terminated solely based on her disability. Plaintiff's claim under the TDA is plausible and should not be dismissed.

### 5. Plaintiff's FMLA Interference Claim

Plaintiff does not oppose dismissal of Count IV – FMLA Interference.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court DENY Schmiede's Motion to Dismiss for disability discrimination under the ADA and TDA.

Respectfully submitted,

*/s/ Lucia V. Izzolo*_____
Heather Moore Collins BPR # 026099
Ashley Shoemaker BPR # 037651
Lucia V. Izzolo BPR # 042496
**HMC Civil Rights Law PLLC**
302 Peachtree Street
Nashville, TN 37210
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com
lucia@hmccivilrights.com
*Attorneys for the Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed and served via the Court's CM/ECF filing system on April 29, 2026, upon all parties of record.

Mary Dohner Smith, TN BPR# 021451
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
Highland Ridge 2
555 Marriott Drive, Suite 315

Nashville, TN 37214
Telephone: (615) 340-3804
Email: mdohner@constangy.com
*Attorney for Defendant*

/s/ Lucia V. Izzolo
Lucia V. Izzolo